**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

SUNSET STONE, INC.,

      Plaintiff,

v.

CONTINENTAL WESTERN INSURANCE COMPANY,

      Defendant.

---

## COMPLAINT AND JURY DEMAND

---

**COMES NOW** SUNSET STONE, INC., by and through its undersigned counsel, and hereby submit this its Complaint against Defendant, CONTINENTAL WESTERN INSURANCE COMPANY, and in support of its Complaint, alleges and avers as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this action seeking economic and non-economic damages arising from Defendant's breach of contract, bad faith conduct, and unreasonable delay and denial in the payment of covered benefits due and owing under Plaintiff's first-party insurance contract.

### PARTIES

2.      Sunset Stone, Inc. ("Plaintiff" or "Sunset Stone") is a Colorado Corporation with its principal office in Castle Rock, Colorado.

3.      Defendant, Continental Western Insurance Company ("Defendant"), is a foreign insurance company incorporated and domiciled in the state of Iowa and maintains its principal place of business in a state other than in Colorado.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction and venue is proper pursuant to 28 U.S.C. §§ 1332(a) and 1441. There is complete diversity among the parties and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. The property which is the subject of the claim and the adjustment of the claim occurred in Colorado.

## FACTS COMMON TO ALL COUNTS

5.      Sunset Stone is the owner of real property located at 702 Prairie Hawk Drive, Castle Rock, Colorado 80109 ("Property").

6.      The Property is covered with three roofing systems:

- Roof A – 61,884.12 square feet – standing seam
- Roof B – 46,483.33 square feet – standing seam
- Roof C – 8,856.50 square feet – TPO single-ply

7.      The Property is cooled via nine gas-fired, direct expansion packaged rooftop units and one air-handling unit with a chilled water coil.

8.      Sunset Stone purchased a Commercial Lines Policy of insurance from Continental Western Insurance Company under Policy Number CPA 3104364-20 (the "Policy"). Plaintiff has requested a Certified Copy of the Policy.

9.      The Policy provides $7,290,500.00 in Building property damage coverage for the Property.

10.      The Policy includes Building Ordinance of Law coverage for Sunset Stone's Property.

11.      The Policy[1] includes a Cosmetic Exclusion, which provides:

---

[1] Plaintiff is not in possession of a Certified Copy of the Policy, and is relying upon assertions by Continental Western Insurance Company that a roofing Cosmetic Exclusion exists within the Policy.

> We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

12.     The Cosmetic Exclusion described above only applies to the Property's roofing systems.

13.     The Policy was issued with effective dates of September 1, 2015 through September 1, 2016.

14.     The Policy is an all risk policy of insurance.

15.     The Policy is a replacement cost value policy and covers loss to the Property.

16.     The Policy provides coverage for loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

17.     Under the Policy, Continental Western Insurance Company agreed to adjust all losses with Sunset Stone fairly and timely.

18.     Sunset Stone paid the premiums due under the Policy in a timely manner, and performed all duties and responsibilities required of them under the Policy.

19.     On or about July 1, 2016, during the Policy period, Sunset Stone suffered a loss at the Property due to hail.

20.     The damage from the hail constituted a covered loss under the Policy.

21.     The damages from the hail to Roof A resulted in large denting, damages seams, and damaged sealant.

22.     The damages from the hail to Roof A resulted in functional damage.

23.     The damages from the hail to Roof A prevent Roof A from continuing to function as a barrier to entrance of the elements to the same extent as it did before the hail damage occurred.

24.     The damages from the hail to Roof B resulted in large denting, damages seams, and damaged sealant.

25.     The damages from the hail to Roof B resulted in hundreds of locations of leaks throughout the entire surface area of the roofing system.

26.     The damages from the hail to Roof B resulted in functional damage.

27.     The damages from the hail to Roof B prevent Roof B from continuing to function as a barrier to entrance of the elements to the same extent as it did before the hail damage occurred.

28.     Sunset Stone timely reported the covered loss and damage to Continental Western Insurance Company, and made a claim for the loss and damage to the Property.

29.     Continental Western Insurance Company assigned Claim Number 40111220 to the Property loss.

30.     Continental Western Insurance Company retained, Pete Gillespie of US Insurance, to investigate Sunset Stone's claim for loss to the Property as a result of the July 1, 2016 hail storm.

31.     On or about August 9, 2016, Pete Gillespie provided Sunset Stone with an estimate outlining $73,358.71 in replacement cost value covered damages ("Gillespie Estimate").

32.     The Gillespie Estimate included only eleven line items.

33.     In adopting the Gillespie Estimate, Continental Western Insurance Company purposefully overlooked the extent of covered damages to the Property. A copy of Continental Western Insurance Company's First Damage Estimate is attached hereto as **Exhibit "A."**

34.     Despite the presence of extensive damage throughout the roofing system, Continental Western Insurance Company's first damage estimate failed to provide for covered damages to Roof B.

35.     Continental Western Insurance Company's first damage estimate improperly excluded general contractor overhead and profit for any of the covered damages.

36.     Continental Western Insurance Company's failure to provide general contractor overhead and profit within its first damage estimate resulted in the delay and denial of covered benefits to Sunset Stone without a reasonable basis.

37.     Continental Western Insurance Company issued Sunset Stone payment in the amount of $72,358.71 (Gillespie Estimate less $1,000.00 deductible).

38.     On or about August 9, 2016, Sunset Stone retained C3 Group, Inc. ("C3 Group"), a Colorado state licensed public adjusting firm, to assist in the adjustment of Sunset Stone's claim for loss to the Property as a result of the July 1, 2016 hail storm.

39.     Sunset Stone retained DG Draper Consulting, LLC ("DG Draper Consulting"), to evaluate damage to the mechanical systems at the Property.

40.     DG Draper Consulting concluded that seven of the nine rooftop mechanical units sustained hail damage such that the units require full replacement.

41.     DG Draper Consulting concluded that the top cabinet panels on three of the nine rooftop mechanical units have circular dents consistent with being struck by hail.

42.     On or about September 6, 2016, DG Draper Consulting authored a comprehensive report outlining repair recommendations for the hail damaged mechanical systems and pricing in the amount of $171,088.00. A copy of the DG Draper Consulting Report is attached hereto as **Exhibit "B."**

43.     On or about September 7, 2016, Sunset Stone's representative, C3 Group, provided Continental Western Insurance Company with a copy of the DG Draper Consulting Report.

44.     On or about September 7, 2016, Sunset Stone's representative, C3 Group, provided Continental Western Insurance Company with Sunset Stone's first damage estimate which outlined $1,486,663.85 in replacement cost value covered damages resulting from the July 1, 2016 hail storm. A copy of C3 Group's First Damage Estimate is attached hereto as **Exhibit "C."**

45.     Shortly thereafter, Continental Western Insurance Company assigned a new claims adjuster, Doug Wilmert, to investigate and adjust Sunset Stone's claim for loss to the Property as a result of the July 1, 2016 hail storm.

46.     Shortly thereafter, Continental Western Insurance Company retained an outcome oriented engineering firm, HAAG Engineering, Inc. ("HAAG"), to investigate Sunset Stone's claim for loss to the Property as a result of the July 1, 2016 hail storm.

47.     On or about September 29, 2016, Continental Western Insurance Company representative, Doug Wilmert, and HAAG representative, Jonathan Goode, performed a reinspection of the Property.

48.     During the September 29, 2016 site inspection, HAAG did not conduct any testing of the Property.

49.     During the September 29, 2016 site inspection, HAAG only performed a visual inspection of the Property.

50.     On or about October 25, 2016, Continental Western Insurance Group retained the services of Groundhog Heating, LLC ("Groundhog") to inspect the damaged HVAC mechanical systems on the Property.

51.     On or about October 25, 2016, Sunset Stone's representative, C3 Group, requested the status of the HAAG report related to its September 29, 2016 inspection of the Property.

52.     On or about November 5, 2016, Sunset Stone's representative, C3 Group, reminded Continental Western Insurance Company of the functional damage to the Property evidenced by hundreds of leaks, dented seams of the panels, and mass water infiltration to the interior of the Property.

53.     On or about November 5, 2016, Sunset Stone's representative, C3 Group, requested that Continental Western Insurance Company coat the Sunset Stone roofing system to mitigate the Property from further damage.

54.     Despite providing for coating of the Sunset Stone roofing system within its first damage estimate, Continental Western Insurance Company ignored Sunset Stone's pleas for emergency mitigation to avoid further damage to the Property.

55.     On or about November 5, 2016, Sunset Stone's representative, C3 Group, for a second time, requested the status of the HAAG report related to its September 29, 2016 inspection of the Property.

56.     On or about November 9, 2016, Sunset Stone's representative, C3 Group, provided Continental Western Insurance Company with an Xactimate estimate for an elastomeric roof coating of the Sunset Stone roofing system to mitigate the Property from further damage. A copy of Sunset Stone's Xactimate Mitigation Estimate is attached hereto as **Exhibit "D."**

57.     On or about November 10, 2016, Sunset Stone's representative, C3 Group, provided Continental Western Insurance Company with an estimate from Trinity Construction Services for emergency mitigation of the Sunset Stone roofing system to mitigate the Property from further damage. A copy of the Trinity Mitigation Estimate is attached hereto as **Exhibit "E."**

58.     On or about November 11, 2016, Continental Western Insurance Company provided Sunset Stone with a copy of HAAG's inspection report ("HAAG Report").

59.     On or about November 11, 2016, Continental Western Insurance Company advised Sunset Stone that its representative, Pete Gillespie, had unintentionally provided for a roof coating in his first estimate dated August 9, 2016.

60.     On or about November 11, 2016, Continental Western Insurance Company advised Sunset Stone that it had overpaid Sunset Stone's loss.

61.     On or about November 20, 2016, Sunset Stone's representative, C3 Group, provided a comprehensive response to the deficiency's contained within the HAAG Report, as well as Continental Western Insurance Company's improper application of the Policy's roofing Cosmetic Exclusion to covered damages. A copy of C3's Response is attached hereto as **Exhibit "F."**

62.     On or about December 2, 2016, Continental Western Insurance Company provided Sunset Stone with an estimate of damages to the HVAC mechanical units created by Groundhog in the amount of $87,760.00 ("Groundhog Estimate").

63.     On or about December 2, 2016, Continental Western Insurance Company provided Sunset Stone with an estimate of damages to the roofing system created by AP Roofing and Specialty Coatings ("AP Roofing") in the amount of $20,515.99 ("AP Roofing Estimate").

64.     Despite damage to numerous soft metals throughout the Property, the AP Roofing Estimate included only seven line items:

- Cleaning of 1,325.00 linear feet of horizontal seams
- Elastomeric roof primer with polyester membrane – 1,325.00 linear feet
- Elastomeric roof coating – 1,325.00 linear feet
- Additional charge for high roof removal (2 stories or greater)
- Additional charge for high roof (2 stories or greater)
- Roofer – 60 hours
- Roofing travel expenses

65. On or about December 2, 2016, Continental Western Insurance Company advised Sunset Stone that it was adopting the Groundhog Estimate of $87,760.00 and AP Roofing Estimate of $20,515.99, for a total revised damage estimate in the amount of $108,275.99.

66. In adopting the Groundhog and AP Roofing Estimate's, Continental Western Insurance Company misapplied the terms of the Policy.

67. More specifically, in adopting the Groundhog and AP Roofing Estimate's, improperly applied the Policy's roofing Cosmetic Exclusion to covered damages throughout the Property.

68. Continental Western Insurance Company's failure to provide for covered damage to soft metals throughout the Property within its revised damage estimate resulted in the delay and denial of covered benefits to Sunset Stone without a reasonable basis.

69. In adopting the Groundhog and AP Roofing Estimate's, Continental Western Insurance Company improperly excluded general contractor overhead and profit for any of the covered damages.

70. Continental Western Insurance Company's failure to provide general contractor overhead and profit within its revised damage estimate resulted in the delay and denial of covered benefits to Sunset Stone without a reasonable basis.

71. Continental Western Insurance Company's revised damage estimate included an additional $34,917.28 in covered damages that were not provided in Continental Western Insurance Company's first damage estimate.

72. Continental Western Insurance Company's failure to include the additional damages described in Paragraphs 62-64 above, within its first damage estimate, resulted in the delay of $34,917.28 in covered benefits without a reasonable basis.

73.     On or about December 2, 2016, Continental Western Insurance Company issued an additional payment in the amount of $34,917.28 ($108,275.99 less prior payment of $72,358.71, less deductible of $1,000.00).

74.     On or about December 2, 2016, Sunset Stone's representative, C3 Group, issued correspondence to Continental Western Insurance Company addressing, among other things:

- Continental Western Insurance Company's disregard of functional damage to the roofing system
- Continental Western Insurance Company's failure to include overhead and profit within its estimate
- Continental Western Insurance Company's improper application of the Policy's roofing Cosmetic Exclusion to numerous non-roofing covered damages
- Continental Western Insurance Company and HAAG's continued disregard of weather data
- Continental Western Insurance Company and HAAG's continued disregard of extensive leaking of the roofing systems
- Continental Western Insurance Company and HAAG's continued disregard of the lack of rust throughout the roofing systems

A copy of C3's Correspondence is attached hereto as **Exhibit "G."**

75.     On or about December 8, 2016, Sunset Stone's representative, C3 Group, requested that Continental Western Insurance Company provide a response to the concerns outlined in its correspondence dated December 2, 2016.

76.     On or about December 13, 2016, Sunset Stone's representative, C3 Group, for a second time, requested that Continental Western Insurance Company provide a response to the concerns outlined in its correspondence dated December 2, 2016.

77.     On or about December 21, 2016, Sunset Stone's representative, C3 Group, for a third time, requested that Continental Western Insurance Company provide a response to the concerns outlined in its correspondence dated December 2, 2016.

78.    On or about December 21, 2016, Continental Western Insurance Company provided Sunset Stone with a revised estimate of damages to the roofing system created by AP Roofing in the amount of $55,338.29 ("AP Roofing Revised Estimate"). A copy of AP Roofing's Revised Estimate is attached hereto as **Exhibit "H."**

79.    In addition to the covered damages outlined in Paragraphs 63-64 above, the AP Roofing Revised Estimate included an additional $34,822.30 in covered damages, including:

- Removal and replacement of 375.00 linear feet of large steel wall coping
- Removal and replacement of 705.00 linear feet of cap flashing
- Removal and replacement of 92.00 neoprene pipe jack flashing for metal roofing
- Removal and replacement of 5.00 exhaust caps
- Removal and replacement of 3.00 exhaust fans
- Removal and replacement of 9.00 5.00" rain cap and storm collars
- Removal and replacement of 5.00 6.00" rain cap and storm collars
- Removal and replacement of 2.00 8.00" rain cap and storm collars
- Removal and replacement of 11.00 galvanized pitch pan/pockets
- Removal and replacement of 1.00 oversized flue cap
- Removal and replacement of 1.00 8.00" gooseneck flat roof exhaust vent/cap
- 16.00 hours of telehandler/forklift and operator

80.    Continental Western Insurance Company's failure to include the additional damages described in Paragraph 79 above, within its first damage estimate, resulted in the delay of $34,882,30 in covered benefits without a reasonable basis.

81.    On or about January 3, 2017, Sunset Stone's representative, C3 Group, requested for a fourth time, that Continental Western Insurance Company provide a response to the concerns outlined in its correspondence dated December 2, 2016.

82.    On or about January 14, 2017, Sunset Stone's representative, C3 Group, for a fifth time, requested that Continental Western Insurance Company provide a response to the concerns outlined in its correspondence dated December 2, 2016.

83.     On or about January 14, 2017, Sunset Stone's representative, C3 Group, issued additional correspondence to Continental Western Insurance Company raising concerns of, among other things:

- Continental Western Insurance Company's disregard of functional damage to the roofing system
- Continental Western Insurance Company and HAAG's continued disregard of the lack of rust throughout the roofing systems
- Continental Western Insurance Company's failure to include overhead and profit within its ANY of its estimates
- Continental Western Insurance Company's and Groundhog's improper application of the Policy's roofing Cosmetic Exclusion to the direct physical damage to the housing cabinets of the Property's HVAC units
- Continental Western Insurance Company and HAAG's continued disregard of weather data
- Continental Western Insurance Company and HAAG's continued disregard of extensive leaking of the roofing systems
- Continental Western Insurance Company and AP Roofing's continued disregard for direct physical damage to the gutter systems of the Property

A copy of C3's Correspondence is attached hereto as **Exhibit "I."**

84.     On or about January 14, 2017, forty-three days after receiving Defendant's revised damage estimate was provided, Sunset Stone requested the status of payment related to Continental Western Insurance Company's revised damage estimate.

85.     On or about January 31, 2017, Continental Western Insurance Company provided Sunset Stone with a revised estimate of damages to the HVAC mechanical units created by Groundhog in the amount of $87,890.00 ("Groundhog Revised Estimate").

86.     On or about March 29, 2017, Continental Western Insurance Company acknowledged direct physical damage to the Property's guttering system, providing Sunset Stone with an estimate in the amount of $24,455.32. A copy of AP Roofing Gutter Estimate is attached hereto as **Exhibit J."**

87.     Continental Western Insurance Company's failure to include the additional damages described in Paragraph 85 above**,** within its first damage estimate resulted in the delay of $24,455.32 in covered benefits without a reasonable basis.

88.     On or about March 31, 2017, Continental Western Insurance Company provided Sunset Stone with a statement of loss which indicated $175,585.95 in covered damages. A copy of the Statement of Loss has been attached hereto as **Exhibit "K."**

89.     Continental Western Insurance Company's Statement of Loss failed to provide general contractor overhead and profit.

90.     Continental Western Insurance Company's failure to provide general contractor overhead and profit within its statement of loss resulted in the delay and denial of covered benefits to Sunset Stone without a reasonable basis.

91.     Continental Western Insurance Company's statement of loss included an additional $102,227.24 in covered damages that were not provided in Continental Western Insurance Company's first damage estimate.

92.     Continental Western Insurance Company's failure to include the additional damages described in Paragraph 88 within its first damage estimate resulted in the delay of $102,227.24 in covered benefits without a reasonable basis.

93.     On or about July 24, 2017, Sunset Stone's representative, C3 Group, requested that Continental Western Insurance Company retain a metallurgist to confirm the functional nature of the damages to the insured's roofing systems.

94.     On or about August 2, 2017, Continental Western Insurance Company demanded Sunset Stone execute a Proof of Loss.

95.     On or about August 17, 2017, Sunset Stone's representative, C3 Group, provided Continental Western Insurance Company with Sunset Stone's second damage estimate which outlined $1,908,950.20 in replacement cost value covered damages resulting from the July 1, 2016 hail storm. A copy of C3 Group's Second Damage Estimate is attached hereto as **Exhibit "L."**

96.     On or about August 17, 2017, Sunset Stone's representative, C3 Group, provided Continental Western Insurance Company with Sunset Stone's executed Proof of Loss which identified $2,072,945.45 in claimed damages after Sunset Stone's $1,000.00 deductible. A copy of Sunset Stone's Executed Proof of Loss is attached hereto as **Exhibit "M."**

97.     The damages identified within Sunset Stone's Proof of Loss included $1,908,950.20 in replacement cost value covered damages and $164,995.25 in mitigation costs to prevent further damage.

98.     Sunset Stone retained Roof Leak Detection Company, Inc. ("Roof Leak Detection Company") to evaluate potential hailstorm damages to the Property's roofing system.

99.     During its inspection, Roof Leak Detection Company observed randomly distributed hailstone impacts upon each slope of the Property's roofing system.

100.    During its inspection, Roof Leak Detection Company observed hailstone impact marks in excess of one and a half inch in irregular diameter.

101.    During its inspection, Roof Leak Detection Company observed deformation of the metal surface within hailstone impact areas.

102.    Roof Leak Detection Company concluded that the protective Galvalume coating of the Property's roofing system was disrupted within the hailstone impact areas.

103.    Roof Leak Detection Company concluded that the disruption within the hailstone impact areas of the Property's roofing system was sufficient enough to accelerate the oxidation process and an enhancement of the deterioration of the underlying sheet metal.

104.    Roof Leak Detection Company concluded that hail damage to the Property constitutes both roofing system and material failure.

105.    Roof Leak Detection Company concluded that hail damage to the Property's roofing system was not cosmetic in nature, but has affected its functionality.

106.    Roof Leak Detection Company concluded that hail damage to the Property's roofing system irreparably caused a reduction in the water-shedding capability of the Property roofing system.

107.    Roof Leak Detection Company concluded that hail damage to the Property's roofing system has diminished the long-term service life of the Property's roofing system.

108.    Roof Leak Detection Company concluded that proper remediation of the hail damage to the Property's roofing systems cannot return the Property's roofing systems to their pre-loss condition.

109.    Roof Leak Detection Company concluded that hail damage to the Property's roofing system requires the complete replacement of all roofing materials at the Property.  A copy of the Roof Leak Detection Report is attached hereto as **Exhibit "N."**

110.    On or about September 8, 2017, Continental Western Insurance Company rejected Sunset Stone's Proof of Loss.

111.    Sunset Stone retained J.E.I. Metallurgical, Inc. ("J.E.I. Metallurgical") to evaluate the extent of hailstone damage to the Property.

112.    J.E.I. Metallurgical harvested six hail divot samples from the roofing system of the Property, three of which were submitted for laboratory evaluation and destructive testing.

113.    J.E.I. Metallurgical concluded the hail divot samples indicated that corrosion in all three samples had breached the last protective barrier, referred to as the intermetallic layer. As a result, pitting corrosion of the steel substrate is occurring and will continue unabated until corrosion fully penetrates the steel substrate in the Galvalume roofing of the Property's roofing system and water penetrates into the workspace below.

114.    J.E.I. Metallurgical concluded that Sunset Stone's roofing system has been functionally damaged.

115.    J.E.I. Metallurgical concluded that Sunset Stone's roofing system has been compromised.

116.    J.E.I. Metallurgical concluded that Sunset Stone's roofing system is no longer capable of completely shedding water because of ponding in the hailstone divots.

117.    J.E.I. Metallurgical concluded that hailstone damage to the roofing system created numerous areas of cracking.

118.    J.E.I. Metallurgical concluded the hailstone damage to the roofing system created full crack penetration of the intermetallic layer.

119.    J.E.I. Metallurgical concluded the hailstone damage to the roofing system created corrosion of the steel substrate.

120.    J.E.I. Metallurgical concluded that as a result of hailstone impact and divot creation to the roofing system, the intermetallic layer of the roofing system was observed to exhibit predominantly brittle behavior.

121.     On or about December 21, 2017, Sunset Stone provided Continental Western Insurance Company with a copy of the J.E.I. Metallurgical Hail Evaluation Report. A copy of the Jerner Hail Evaluation Report is attached hereto as **Exhibit "O."**

122.     Despite objective evidence of functional damage to the roofing systems, Continental Western Insurance Company continues to deny Sunset Stone's claim for loss to the Property as a result of the July 1, 2016 hail storm.

123.     Sunset Stone has fulfilled all duties required of it under the Policy after discovery of the loss.

124.     Sunset Stone has performed all conditions precedent and subsequent required under the insurance Policy, or alternatively, have been excused from performance by the acts, representations, and/or conduct of Continental Western Insurance Company.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

125.     Sunset Stone realleges and reaffirms Paragraphs 1-124 as if fully set forth herein.

126.     Sunset Stone purchased an all risk policy requiring Continental Western Insurance Company to pay for any and all fortuitous damages resulting from a loss not expressly excluded or otherwise limited by the Policy.

127.     The Policy between Sunset Stone and Continental Western Insurance Company is a binding contract.

128.     Sunset Stone paid premiums and otherwise performed all conditions precedent to recovery of benefits under its Policy with Continental Western Insurance Company.

129.     Continental Western Insurance Company has denied certain covered damages and continues to delay and deny certain claimed damages.

130.    Continental Western Insurance Company's failure to honor its obligations under the Policy is a breach of contract.

131.    Continental Western Insurance Company's breach of contract has damaged, and continues to damage Sunset Stone.

132.    Sunset Stone is entitled to all benefits due and owing under the Policy.

**WHEREFORE**, Plaintiff, Sunset Stone, Inc., respectfully requests this Court enter judgment against, Defendant, Continental Western Insurance Company, for damages resulting from its breach of contract, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

133.    Sunset Stone realleges and reaffirms Paragraphs 1-132 as if fully set forth herein.

134.    Under the Policy and Colorado law, Continental Western Insurance Company owes its insured the duty of good faith and fair dealing.

135.    An insurer breaches its duty of good faith and fair dealing when it engages in unfair claim settlement practices.

136.    Continental Western Insurance Company sold Sunset Stone the Policy at issue, the intent of which was to provide coverage for loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

137.    Continental Western Insurance Company knew that Sunset Stone purchased the Policy to protect its Property in the event of a loss.

138.    Continental Western Insurance Company owed Sunset Stone the non-delegable duty to investigate its claim objectively and not look for ways to deny benefits or attempt to not pay the full amount owed.

139.    Continental Western Insurance Company owed Sunset Stone the duty to give equal consideration to the financial interests of Sunset Stone, and not give greater consideration to its own financial interests while investigation and adjusting Sunset Stone's claim.

140.    Continental Western Insurance Company failed to interpret its insurance policy reasonably.

141.    Continental Western Insurance Company failed to resolve doubts concerning insurance coverage in favor of the policyholder.

142.    Continental Western Insurance Company failed to evaluate the reports received from its consultants to determine whether the consultant had conducted the necessary investigation of the claim.

143.    Continental Western Insurance Company knew that its decision to underpay benefits owed to Sunset Stone was intentional and not accidental.

144.    Continental Western Insurance Company failed to treat Sunset Stone's interests with equal regard to its own.

145.    Continental Western Insurance Company mischaracterized the facts and coverage to the benefit of itself.

146.    Continental Western Insurance Company failed to conduct a full, fair, and prompt investigation of Sunset Stone's claim.

147.    Continental Western Insurance Company failed to objectively evaluate Sunset Stone's claim based on all available evidence, and not just evidence which Continental Western Insurance Company believed supported its position.

148.    Continental Western Insurance Company improperly denied Sunset Stone's claim by failing to examine and question its retained consultant's reports to assure that they contained all opinions necessary to properly evaluate the claim.

149.    Continental Western Insurance Company improperly denied Sunset Stone's claim by failing to examine and question its retained consultant's reports to assure that they were based on all relevant and available evidence.

150.    Continental Western Insurance Company representatives, including Doug Wilmert, received income-based compensation to quickly close Sunset Stone's claim for loss or damage to covered property at the Property caused by or resulting from any covered cause of loss.

151.    Continental Western Insurance Company representatives, including Doug Wilmert, received income-based compensation to reduce claims payments made to Sunset Stone on its claim for loss or damage to covered property at the Property caused by or resulting from any covered cause of loss.

152.    Continental Western Insurance Company improperly set claims handling goals to reduce the amount paid on claims, including Sunset Stone's claim for loss or damage to covered property at the Property caused by or resulting from any covered cause of loss.

153.    Continental Western Insurance Company improperly delayed Sunset Stone's claim to reduce overall claims payments.

154.    Continental Western Insurance Company improperly delayed Sunset Stone's claim to increase profits.

155.    Continental Western Insurance Company improperly delayed Sunset Stone's claim to maintain its loss ratio.

156.    Continental Western Insurance Company improperly delayed Sunset Stone's claim to meet department goals.

157.    Continental Western Insurance Company improperly delayed Sunset Stone's claim by providing financial incentives to its personnel, including Doug Wilmert, to influence claims handling.

158.    Continental Western Insurance Company improperly delayed Sunset Stone's claim to reduce the average amount paid on overall claims.

159.    Continental Western Insurance Company's conduct in the handling of Sunset Stone's claim demonstrates that Continental Western Insurance Company was focused on benefiting itself to the detriment of Sunset Stone.

160.    Continental Western Insurance Company has committed unfair settlement practices, including, but not limited to:

(a)     Continental Western Insurance Company has failed to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies;

(b)     Continental Western Insurance Company has failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(c)     Continental Western Insurance Company refused to pay claims without conducting a reasonable investigation based upon all available information;

(d)     Continental Western Insurance Company has failed to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

(e)     Continental Western Insurance Company has failed to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

(f)     Continental Western Insurance Company has misrepresented terms and conditions of the Policy in an attempt to influence its Insured to settlement for less than all benefits reasonably afforded under the Policy for the subject loss and damage; and

(g)     Continental Western Insurance Company encourages its claims representatives to engage in unfair claims settlement practices against its

Insured, thereby violating applicable laws and regulations of the State of Colorado.

161.    As a direct and proximate result of Continental Western Insurance Company action, Sunset Stone has:

    (a)    Incurred increased costs to repair, restore and/or replace the significant property damage that was caused by loss or damaged resulting from the July 1, 2016 hail storm;

    (b)    Suffered damages as a proximate result of the misconduct alleged; and

    (c)    Suffered and will continue to suffer other expenses, including loss of pre-judgment interest, attorneys' fees, investigatory gees, and other losses.

**WHEREFORE**, Plaintiff, Sunset Stone, Inc., respectfully requests this Court enter judgment against Defendant, Continental Western Insurance Company, for damages resulting from its breach of its duty of good faith and fair dealing, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

### THIRD CLAIM FOR RELIEF
**(Unreasonable Delay and Denial of Payment of Covered Benefits Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)**

162.    Sunset Stone re-alleges and reaffirms Paragraphs 1-161 as though fully set forth herein.

163.    Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

164.    Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

165.    Sunset Stone is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

166. Sunset Stone suffered a loss covered by the Policy and submitted a claim for that loss to Continental Western Insurance Company.

167. The claimed loss and damage submitted by Sunset Stone was covered by the Policy and Sunset Stone was owed covered benefits under the Policy.

168. Continental Western Insurance Company delayed payment of covered benefits without a reasonable basis for its actions.

169. Continental Western Insurance Company denied payment of covered benefits without a reasonable basis for its actions.

170. Continental Western Insurance Company has unreasonably delayed covered benefits without a reasonable basis for doing so as alleged in the preceding paragraphs of Sunset Stone's Complaint.

171. Continental Western Insurance Company delayed and denied payment of covered benefits without a reasonable basis for its action by failing to properly investigate its insured's loss.

172. Continental Western Insurance Company delayed and denied payment of covered benefits without a reasonable basis for its action by providing a first damage estimate without having documented a reasonable investigation based upon all information.

173. Continental Western Insurance Company delayed and denied payment of covered benefits without a reasonable basis for its action by providing a first damage estimate which did not include all covered damages.

174. Continental Western Insurance Company delayed and denied payment of covered benefits without a reasonable basis for its action by forcing Sunset Stone to retain its own professionals to help properly adjust the covered loss.

175.   Despite receipt of Sunset Stone's comprehensive estimate, Continental Western Insurance Company delayed and denied payment of covered benefits without a reasonable basis for doing so.

176.   Continental Western Insurance Company unreasonably delayed and denied Sunset Stone's claim to reduce overall claims payments.

177.   Continental Western Insurance Company unreasonably delayed and denied Sunset Stone's claim to increase profits.

178.   Continental Western Insurance Company unreasonably delayed and denied Sunset Stone's claim to maintain its loss ratio.

179.   Continental Western Insurance Company unreasonably delayed and denied Sunset Stone's claim to meet department goals.

180.   Continental Western Insurance Company unreasonably delayed and denied Sunset Stone's claim by providing financial incentives to its personnel, including Doug Wilmert, to determine claims handling.

181.   Continental Western Insurance Company unreasonably delayed and denied Sunset Stone's claim by motivating its claims department to pay less on claims, such as Sunset Stone's claim for damages, than what is otherwise owed.

182.   Continental Western Insurance Company unreasonably delayed and denied Sunset Stone's claim to reduce the average amount paid on overall claims.

183.   Continental Western Insurance Company unreasonably delayed and denied Sunset Stone's claim by asserting coverage positions that it knew were without merit.

184.   The actions of Continental Western Insurance Company were intended to dissuade Sunset Stone in pursuing benefits due and owing under the terms of the Policy.

185.   Based upon the foregoing Paragraphs is therefore entitled to two times the covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE**, Plaintiff, Sunset Stone, Inc., respectfully requests this Court enter judgment against Defendant, Continental Western Insurance Company, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

## <u>REQUEST FOR JURY TRIAL</u>

186.   Sunset Stone requests trial by jury with respect to all claims and issues triable to a jury.

Respectfully submitted this 7th day of March, 2018

/s/ Jonathan E. Bukowski
Larry E. Bache, Jr., Esq.
Jonathan E. Bukowski, Esq.
Merlin Law Group, PA
1001 17th Street, Ste. 1150
Denver, CO 80202
Telephone:  720-665-9680
Facsimile:   720-665-9681
E-Mail: lbache@merlinlawgroup.com
E-Mail: jbukowski@merlinlawgroup.com
